# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41182
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 27, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JASON CRAIG MONTGOMERY,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CR-84-1

Before BARKSDALE, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A jury convicted Jason Craig Montgomery of one count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Montgomery contends the district court erred by denying his motion to dismiss the indictment; denying his motions for judgment of acquittal and new trial; and not sustaining his objection to an eight-level enhancement pursuant to

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 17-41182

Sentencing Guideline § 2G1.3(b)(5) ("offense involved a minor who had not attained the age of 12 years").

Montgomery was indicted on one count of attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). He pleaded not guilty and, about a week prior to trial, moved, pursuant to Federal Rule of Criminal Procedure 12(b)(2), to dismiss the indictment, claiming the "undisputed facts" showed he did not act with the

> intent to transform or overcome the fictitious minor's will, never took a substantial step corroborating his intent to engage in conduct designed to persuade, induce, entice or coerce a minor to participate in prohibited sexual activity, and never used or attempted to use a means of interstate commerce to communicate with a person purportedly under 18 to attempt to persuade, induce, entice or coerce that minor to participate in prohibited sexual activity.

The motion was denied on the grounds the indictment was sufficient on its face and factual disputes warranted trial.

At trial, FBI Special Agent Mullican, with the FBI's Child Exploitation Task Force, testified she began investigating Montgomery when she discovered an ad Montgomery posted to the Craigslist website in March 2017, identifying himself as a "daddy" seeking "a younger girl, 17 to 25, that's [sic] been looking for a fantasy with an older man". Although the ad did not mention minors, the Agent believed it exhibited certain "flags", including the use of the term "daddy" and the reference to a "younger girl". She responded to this ad, as well as an identical one Montgomery posted five days later.

The Agent adopted the persona of a single mother who was interested in "taboo", meaning "an adult with a child with a willingness to engage in sexual activity", and in "M&D", meaning sexual relations between a mother and daughter. Montgomery asked how old her child was, and the Agent responded her (fictitious) daughter was ten. Shortly after, Montgomery asked whether

2

the Agent and her daughter had engaged in sexual activity together. The Agent explained to Montgomery she was looking "to watch somebody be engaged in sexual activity with [her] child" for purposes of her sexual stimulation, and asked Montgomery whether he was only interested in role play or whether he sought an encounter with a child. Montgomery stated he had only participated in role play before because he did not have a daughter and he had no sexual experience with children.

Over the course of about two weeks in April 2017, Montgomery and the Agent continued to chat using Kik messenger. The Agent testified she sometimes disengaged and offered Montgomery several opportunities to leave the conversation. She also asked him how he knew he was interested in sex with her ten-year-old if he had no experience, and Montgomery responded that he "like[d] younger" and knew what he wanted.

The Agent repeatedly reminded Montgomery she was not planning to participate in any sexual activity; she was solely interested in watching someone have sex with her daughter; and she was interested in more than just role play. Nevertheless, Montgomery continued to chat with the Agent; stated he found the idea of the Agent's having sex with her daughter to be sexually stimulating; and described how he would engage in sexual contact with the child. Montgomery also expressed knowledge that his conduct was illegal; and he offered the Agent advice about avoiding legal repercussions for their actions, including drugging the child to maintain a level of secrecy.

Montgomery and the Agent eventually made plans to meet in person with her daughter present. They discussed the items Montgomery would bring to their meeting, including sleeping pills and allergy medicine to drug the daughter; a trophy Montgomery won in a motorcycle race; alcohol; flash drives for the Agent to save pornographic images of her daughter; and condoms.

No. 17-41182

On the agreed-upon day, Montgomery arrived at the designated meeting place, purportedly the Agent's apartment complex, and was arrested. Montgomery had a sleeping pill and an allergy pill in his pockets, and condoms, beer, two flash drives, and a trophy in his vehicle at the time of his arrest.

After the Government rested its case, Montgomery moved for judgment of acquittal, again contending he did not act "with the intent to transform or overcome the fictitious minor's will", take a substantial step corroborating his intent, or use a means of interstate commerce to communicate with a purported minor as required to support a conviction under 18 U.S.C. § 2422(b). The motion was denied, and the jury found Montgomery guilty.

Following trial, Montgomery again moved for a judgment of acquittal and moved for a new trial. In the motions, Montgomery raised the same grounds as those in the pre-verdict motion for judgment of acquittal. In addition, Montgomery asserted the Government failed to present sufficient evidence to overcome his *prima facie* showing of entrapment. The court denied both motions.

The presentence investigation report (PSR) assigned a total offense level of 38 and a criminal history category of I, resulting in an advisory Guidelines sentencing range of 235 to 240 months' imprisonment. The total offense level included an eight-level enhancement pursuant to Guideline § 2G1.3(b)(5) because the fictitious minor involved in the offense was said to be under 12 years of age. Montgomery objected to the enhancement, asserting it violated his due-process rights and constituted "sentencing entrapment" or "sentence factor manipulation". Along that line, he claimed the Government had "exclusive control over facts", including the purported minor's age, that it could manipulate to "ratchet up the sentence in violation of due process". Montgomery also moved for a downward variance based on his age, his lack of

4

No. 17-41182

criminal history, the nonviolent nature of the offense, his education level, his low risk of recidivism, and his not having had contact with the fictitious minor.

At the sentencing hearing, the court acknowledged the PSR's sentencing range was in error, with the correct range calling for 235 to 293 months' imprisonment. After hearing argument, the court overruled Montgomery's objections to the PSR, including his opposition to the Guideline § 2G1.2(b)(5) enhancement. Montgomery renewed the request for a downward variance, but the court concluded a variance was unwarranted. Montgomery was sentenced, *inter alia*, to 235 months' imprisonment.

For the first of his three issues, Montgomery asserts the court erred by denying his motion to dismiss the indictment because the undisputed facts did not state a violation of 18 U.S.C. § 2422(b). Denial of a motion to dismiss an indictment is reviewed *de novo*. *United States v. Arrieta*, 862 F.3d 512, 514 (5th Cir. 2017).

A conviction under § 2422(b) requires defendant: used a facility of interstate commerce to commit the offense; was aware the victim was younger than 18; by engaging in sexual activity with the victim, could have been charged with a criminal offense under state law; and knowingly persuaded, induced, enticed, or coerced the victim to engage in criminal sexual activity. 18 U.S.C. § 2422(b); *United States v. Rounds*, 749 F.3d 326, 333 (5th Cir. 2014). "To sustain a conviction for attempt, the evidence must show that the defendant (1) acted with the culpability required to commit the underlying substantive offense, and (2) took a substantial step towards its commission." *United States v. Olvera*, 687 F.3d 645, 647 (5th Cir. 2012) (internal quotation marks and footnote omitted).

Section 2422(b) does not require defendant actually engage in sexual contact, *see United States v. Barlow*, 568 F.3d 215, 219 n.10 (5th Cir. 2009);

and defendant can violate the statute solely through communications with an adult where defendant directs his inducements to a child, *Olvera*, 687 F.3d at 647–48, or communications with an undercover agent posing as a person with access to a child, *United States v. Caudill*, 709 F.3d 444, 445–46 (5th Cir. 2013).

Montgomery contends the undisputed facts were insufficient to state a violation of § 2422(b) because it requires "defendant's interaction with the intermediary . . . be aimed at transforming or overcoming the child's will". *United States v. Hite*, 769 F.3d 1154, 1164 (D.C. Cir. 2015). In doing so, Montgomery attempts to distinguish our court's holding in *Caudill* by asserting our court required confirmation that Caudill's minor victims would engage in sexual intercourse, whereas Montgomery "only agreed to an initial meeting with the adult intermediary and fictitious minor to get to know them[,] and no offer of compensation was made". Montgomery also notes he rejected the Agent's offer to pass a message to her daughter before the meeting and there was no evidence of communication with the minor.

Nevertheless, our circuit requires only that defendant take "actions directed toward obtaining the child's assent through an intermediary". *Olvera*, 687 F.3d at 648 (emphasis omitted). Defendant can attempt to persuade, induce, entice, or coerce a minor to engage in sexual activity by relying on a parent's influence or control over the child. *See Caudill*, 709 F.3d at 447. The indictment alleged Montgomery's inducements were directed at obtaining a ten-year-old child's consent to sexual activity through a Government agent he believed to be the child's mother. Further, "[w]hether there was inducement, persuasion, or enticement is a question of fact for the jury to decide". *United States v. Lundy*, 676 F.3d 444, 450 (5th Cir. 2012). Therefore, the court did not err by denying Montgomery's motion to dismiss the indictment.

No. 17-41182

Montgomery next asserts the court erred by denying his motion for judgment of acquittal and abused its discretion by denying his new-trial motion. Because both motions were based on the same grounds, they will be discussed together. Montgomery claims the trial evidence was insufficient to show: his intent to violate § 2422(b); he took a substantial step corroborating that intent; and the Government rebutted his *prima facie* showing of entrapment.

The denial of Montgomery's motion for judgment of acquittal is reviewed *de novo*. *United States v. Lewis*, 774 F.3d 837, 841 (5th Cir. 2014). Denial of the new-trial motion is reviewed for abuse of discretion; questions of law, *de novo*. *United States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015). A new trial may be granted in the interest of justice. Fed. R. Crim. P. 33(a). Motions for a new trial are "disfavored and reviewed with great caution". *Pratt*, 807 F.3d at 645.

When reviewing a challenge to the sufficiency of the evidence, our court considers "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *United States v. Imo*, 739 F.3d 226, 235 (5th Cir. 2014) (internal quotation marks, citation, and emphasis omitted). The evidence is viewed "in the light most favorable to the verdict", and this court accepts "all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict". *Id.* (internal quotation marks and citation omitted). "The evidence presented need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Id.* (internal quotation marks and citation omitted). "[T]his court asks only whether the jury's decision was rational, not whether it was correct". *Lewis*, 774 F.3d at 841 (internal quotation marks and

No. 17-41182

citation omitted).   Montgomery claims the evidence was insufficient in the following three ways.   Each claim fails.

First, Montgomery contends:   § 2422(b) "does not criminalize intent to persuade at a future face-to-face meeting, or agreeing or arranging to have sex with a minor through an adult intermediary"; and "the adult must direct some of his inducements to the minor . . . or seek confirmation that the minor would engage in sexual activity".   Nevertheless, our court has specifically held "defendant's acts must target a child", but "the terms 'persuade,' 'induce,' 'entice,' or 'coerce' do not require that there be communication between a perpetrator and a child or that a perpetrator must request an intermediary to convey the perpetrator's communications to a minor".   *Caudill*, 709 F.3d at 447.

Montgomery sought confirmation that the Agent's daughter would be interested in having sex with him, and asked the Agent to explain why she thought her daughter would be interested in him.   Further, Montgomery's communications with the Agent evinced an intent to persuade, induce, entice, or coerce her child into sexual activity by stating that, for the first encounter, they would need to give the child "sleepy medicine so she will tape [sic] a nap while we play w [sic] her", and by relying on the Agent's influence over her child.  Montgomery asked what the Agent wanted to have happen to her "little babe"; described his "ideal night" with the daughter at the Agent's request and stated he would not "force the situation"; offered to give the child a trophy he won; asked the Agent what she had told her daughter about him; and stated he would hate to disappoint the child.   In short, a rational jury could have found the evidence sufficient to show Montgomery possessed the requisite intent to violate § 2422(b).   *See Pratt*, 807 F.3d at 645; *Imo*, 739 F.3d at 235; *Lewis*, 774 F.3d at 841.

8

No. 17-41182

Second, Montgomery contends the evidence did not show he took a substantial step toward a violation of § 2422(b). "A substantial step is defined as conduct which strongly corroborates the firmness of defendant's criminal attempt." *United States v. Broussard*, 669 F.3d 537, 547 (5th Cir. 2012) (internal quotation marks and citation omitted).

Our court has routinely held conduct like Montgomery's constitutes a substantial step toward committing a violation of § 2422(b). *See*, *e.g.*, *Olvera*, 687 F.3d at 648 (finding defendant took substantial steps by asking adult intermediary to send sexual messages and photos to a minor and arriving at arranged meeting place); *Barlow*, 568 F.3d at 219–20 (finding defendant took a substantial step when, over the course of months, he engaged in sexual conversations with a purported minor, drove to the meeting location, and then left early); *United States v. White*, 636 F. App'x 890, 893 (5th Cir. 2016) (finding the evidence was sufficient to show an attempt to violate § 2422(b) when defendant exchanged sexual messages with purported minor and arrived at arranged meeting place with condoms), *cert. denied*, 136 S. Ct. 2039 (2016). "Travel to a meeting place is . . . sufficient to establish" a substantial step toward an attempt to violate § 2422(b). *United States v. Howard*, 766 F.3d 414, 421 (5th Cir. 2014).

Third, Montgomery asserts the evidence was insufficient to support the jury's rejection of his entrapment defense. To establish entrapment, defendant must make a *prima facie* showing of "(1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense". *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009). The burden then shifts to the Government "to prove beyond a reasonable doubt that the defendant was disposed to commit the offense prior to first being

approached by government agents". *United States v. Bradfield*, 113 F.3d 515, 522 (5th Cir. 1997).

Generally, entrapment is a question for the jury. *Mathews v. United States*, 485 U.S. 58, 63 (1988). When, as here, the jury is instructed on entrapment, "the applicable standard of review is the same which applies to sufficiency of the evidence". *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001) (internal quotation marks and citation omitted). In other words, our court must accept the facts in the light most favorable to the verdict and reverse "only if no rational jury could have found beyond a reasonable doubt either (1) lack of government inducement or (2) predisposition to commit the charged crime". *Id.*

Montgomery contests evidence of predisposition. He distinguishes between sexual interest in "young ladies, [17] years or older" with sexual interest in minors. Specifically, he points to text messages indicating his interest in teenagers and his Craigslist ad, which requested responses from women aged 17 to 25. He further contends his statement to the Agent that he knew he wanted to have sex with a minor despite having never done so suggested a "fantasy" rather than a "true predisposition" to sexual attraction to minors. Nevertheless, the evidence was sufficient to show both predisposition and lack of Government influence.

Upon first learning the Agent's daughter was ten years old, Montgomery immediately asked whether she and her daughter were sexually active together. The Agent testified that, in other investigations, suspects would often react with revulsion or immediately disengage upon learning her daughter's age. Montgomery also quickly suggested giving the child "sleepy medicine so she will tape [sic] a nap while we play w [sic] her". He stated he "like[d] younger" and knew what he wanted when questioned about his sexual

interest in the child.  Despite the Agent's statements that she did not intend to have sex with Montgomery and was not interested in role play, Montgomery continued to chat with her.  Montgomery was also aware of the illegal nature of his actions and demonstrated knowledge about avoiding legal repercussions. Finally, the Agent disengaged from the conversation at times and offered Montgomery several opportunities to abandon his plans.  Because the evidence showed Montgomery's "active, enthusiastic participation" and "demonstrated expertise in the criminal endeavor", it was sufficient to show his predisposition. *See Theagene*, 565 F.3d at 919.

In sum, a rational jury could have found the evidence sufficient to show Montgomery possessed the requisite intent to violate § 2422(b), took a substantial step toward the commission of the offense, and was not entrapped. Accordingly, the court did not err or abuse its discretion by denying his motions.

Regarding his sentence, Montgomery contends the court erred by overruling his objection to the eight-level enhancement under Guideline § 2G1.3(b)(5).  (Although Montgomery references the court's not granting his request for a downward variance, he fails to brief adequately any asserted error in the court's decision, thereby waiving the issue (if, in fact, it is even raised). *See United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010).)

Although post-*Booker*, the Sentencing Guidelines are advisory only, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 48–51 (2007).  If no such procedural error exists, a properly preserved objection to an ultimate sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 51; *United States v. Delgado-Martinez*, 564 F.3d 750, 751–53 (5th Cir. 2009).  In that respect, for issues

preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

Section 2G1.3(b)(5) applies an eight-level enhancement to the base offense level if "the offense involved a minor who had not attained the age of 12 years". U.S.S.G. § 2G1.3(b)(5). The Guidelines define a "minor" as

> (A) An individual who had not attained the age of 18 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.

*Id.* § 2G1.3 cmt. n.1.

Montgomery contends the court erred by applying the enhancement because the Agent unilaterally chose the age of the fictitious minor, which allowed the Government to manipulate his sentence in a violation of due process. Further, he claims the Government's selection of the minor's age constitutes sentence entrapment or sentence factor manipulation.

Sentencing entrapment or sentence factor manipulation "occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment". *United States v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011). In claiming sentencing entrapment, defendant must establish he was persuaded to commit a greater offense than he otherwise was predisposed to commit or that the conduct of law enforcement officials was overbearing or outrageous. *United States v. Robertson*, 297 F. App'x 316, 317 (5th Cir. 2008).

Our court has not determined whether the concept of sentencing entrapment or factor manipulation is a cognizable claim but has addressed a similar contention in the context of a due-process claim. *Jones*, 664 F.3d at

984; *Robertson*, 297 F. App'x at 317 (noting viability of "sentencing entrapment" defense remains unresolved); *see also United States v. Tremelling*, 43 F.3d 148, 150–52 (5th Cir. 1995) (declining to recognize the defense but instead analyzing the claim under the due-process outrageous-conduct standard).  Assuming, without deciding, our court recognizes such a defense, Montgomery has not met his burden to show that he was persuaded to commit a greater offense than he otherwise was predisposed to commit or that the conduct of law enforcement officials was overbearing or outrageous.  *See Robertson*, 297 F. App'x at 317.

As discussed *supra,* he eagerly discussed the possibility of having sex with the Agent's daughter after learning she was ten years old and even suggested drugging the child with sleeping medicine.  He asserted he "like[d] younger" and knew what he wanted when questioned about his sexual interest in the child.  And, the Agent's conduct was not overbearing or outrageous because she repeatedly disengaged from the conversation and offered Montgomery opportunities to abandon his plans.

AFFIRMED.